## A. A. Root et al., Appellants, v. John C. Utter, Appellee.

1. Chattel mortgage—*third person.* The "third person" men-·
tioned in section one, of the Chattel Mortgage Act, must be a
creditor, incumbrancer, or purchaser.

2. Chattel mortgage—*extension of note.* Where a surety on a
note accepts a chattel mortgage as security and does not extend the
mortgage in compliance with sec. 4 of the Chattel Mortgage Act,
on a renewal of the note, nor take possession of the property when
the same becomes due, the divorced wife of the mortgagor to whom
the mortgaged property was awarded by the decree as alimony,
after the note became due and before demand was made for the
property, is not entitled thereto, as against the mortgagee.

3. Animals—*agister's lien.* Where a mortgagor as tenant of
his father-in-law is restrained by an injunction gotten by his wife
from removing the stock covered by the mortgage pending a di-
vorce proceeding, the landlord is not entitled to an agister's lien,
there being no evidence tending to show ·that an agreement was
made relative to feeding the stock, etc., and no account being kept
of the amount of feed used and the amount of work done by the
horses.

Replevin. Appeal from the Circuit Court of Wabash county; the
Hon. Jacob R. Creighton, Judge, presiding. , Heard in this court at
the March term, 1912. Reversed and remanded. Opinion filed June
5, 1912.

E. B. Green and Theodore G. Risley, for appellants.

M. H. Mundy and George P. Ramsey, for appellee.

Mr. Justice Shirley delivered the opinion of the
court.

Appellants brought suit in replevin to recover the
possession of certain horses and colts also some har-
ness and a cultivator alleged in the declaration to have
been wrongfully detained by appellee. Pleas of *non
cepit, non detinet,* property in Marie Harbin, and of
an agister's lien in favor of appellee were filed, all of
which were traversed. A jury being waived, the court
found the right of property and ownership to be in

Marie Harbin, subject to a lien for feed in favor of appellee for three hundred and fifty dollars, assessed the further sum of one hundred and thirty dollars damages against appellants in favor of appellee, awarded a writ of *retorno habendo,* and entered judgment upon the findings and order.

It appeared from the evidence that on July 24, 1909, one Hugh Harbin executed a chattel mortgage on the property in controversy to appellants reciting therein that it was given to indemnify appellants in becoming sureties for Harbin on a promissory note for the sum of fifteen hundred and fifty dollars, executed by him to H. Brokerage and Son, dated April 13, 1909, and due October 13, 1909. It was further recited that the mortgage was intended to cover the property described, for the term of two years, and that the property should remain in the possession of Harbin until default, or if the mortgagees felt insecure with or without apparent cause, they might take possession of the property, sell the same at public or private sale, retain the amount of the note and all expenses and pay the surplus to the mortgagor.

It further appeared the note was not paid when due and was renewed by the mortgagor and appellants as sureties on October 13, 1910, by the execution of a new note for the same indebtedness payable six months after date to one C. H. Brocksmith. No demand was made for the property when this note became due on April 13, 1911, nor until the first part of May following, when demand was made by appellants of appellee who was in possession. Appellee refusing to deliver possession, appellants filed this suit on May 6, 1911, and paid off and discharged the note to Brocksmith on May 27th following. On April 26, 1911, said Marie Harbin, the wife of Hugh Harbin, was granted a decree for divorce from Hugh Harbin and by the decree the property described in the mortgage was awarded to her in full of alimony for herself and child.

The first question presented by the assignment of

errors is that part of the decree which finds the right
of property in Marie Harbin.

The extension of the mortgage was not made in com-
pliance with Sec. 4 of the chattel mortgage act, nor
was possession taken of the property by the mortgagees
on the maturity of the note. If this was fraudulent
as to third persons which it is not necessary to deter-
mine it was valid and binding on the mortgagor Hugh
Harbin. Marie Harbin was the wife of the mortgagor
but it is urged that when she was divorced and the
marriage relation dissolved she occupied the relation
of a "third person" and therefore the decree award-
ing the property to her for alimony is superior to the
rights of the mortgagees and the mortgage fraudulent
as to her.

It was held in Sumner v. McKee, 89 Ill. 127, that
the "third persons" mentioned in Sec. 1 of the chattel
mortgage act must be creditors, encumbrancers, or
purchasers and that the mortgagor's widow, heir and
administrator, were not "third persons" as to whom
the mortgage would be void but were identified with
the mortgagor.

In that case the property was permitted to remain
in the possession of the mortgagor after default.
Upon the death of the mortgagor his widow in the
administration of his estate filed a relinquishment and
selected the mortgaged property on her award. The
court held that the widow stood in the shoes of the
mortgagor and as to her the property after default
was no longer the property of the mortgagor, and that
as his widow she must be required to take the property
as the mortgagor left it cumbered by a lien which as
to him and his widow became absolute on default of
payment. On principle we are unable to see any dis-
tinction in the relation of the parties between that case
and this.

In this case the marriage relation was dissolved by
divorce instead of by death. The divorced widow was

entitled to alimony out of property belonging to the husband. She was not a creditor, encumbrancer or purchaser in any sense, and she was not entitled to property for alimony not belonging to the husband. The property on default was not the property of the husband but of the mortgagees subject only to the claims of creditors, encumbrancers and purchasers. Marie occupied the same position as her husband and it was error to find the right of property in her as against appellants and to order a writ of *retorno*.

Error is also assigned on the finding of the chancellor that appellee was entitled to a lien upon the property in the sum of three hundred and fifty dollars for feed furnished the stock.

Marie Harbin was the daughter of appellee. Hugh Harbin, the mortgagor, took the property to the farm of appellee the first of the year 1910 where Harbin was to plant a crop as a tenant of appellee. Soon afterwards in the same month Harbin and his wife Marie had trouble and separated. Harbin left the farm leaving the property there. The next day after the separation Marie filed a suit for divorce and secured a writ of injunction restraining Harbin from selling or taking away the property.

The property remained on the farm under the restraining order until the decree for divorce was granted April 26, 1911. The stock was fed by appellee at the farm during the time, and the work animals were used by him on the farm whenever their services were required. Appellee was never requested by Harbin or the mortgagees to pasture and feed the stock and there is no evidence they were left there for that purpose. Appellee knew Harbin had been restrained at the instance of his daughter from removing the stock. He never during the fifteen months the stock was on his farm claimed or demanded pay for feed or pasture, and he made no such claim when appellants demanded the property in this suit. The only claim

made by him was that the mortgage was not worth a d—n and appellants would have to get the stock by law. He kept no account of the feed of the horses nor how much of the time he worked them. It is apparent from this testimony that appellee if he was keeping the stock for anybody it was his daughter whose injunction writ restrained Harbin from taking it away and not as an agister for Harbin. Aside from this, however, an agister is defined to be "one who receives and pastures cattle for hire." Howard Com. Co. v. Nat. Live Stock Bank, 93 Ill. App. 475. There was no hiring here. It is elementary that one person cannot create another his debtor without that other's consent. Dedman v. Williams, 2 Ill. (1 Scam.) 154; Durant v. Rogers, 71 Ill. 121; Wilton v. Tazwell, 86 Ill. 29. "A person cannot make another his debtor by performing labor for him against his wish and without his assent." Alton v. Mulledy, 21 Ill. 76. Appellee did not under the evidence come within the definition of an agister entitling him to a lien upon the property and it was error to give him such lien.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*